# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT PORTER, | ) | Case No. 1:19-cv-210 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| SEAN BOWERMAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Robert Porter, an Ohio prisoner serving an aggregate 20-year sentence[1] for involuntary manslaughter, a firearm specification and aggravated robbery, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Porter claims that his convictions and sentences in *State v. Porter*, Cuy. Cty. Ct. Comm. Pl. Case No. CR-14-585728-A, violated his federal constitutional rights. ECF Doc. 1. On April 4, 2019, respondent, Warden Sean Bowerman, moved to dismiss as untimely Porter's petition. ECF Doc. 8. Porter filed a memorandum in opposition to the warden's motion on June 21, 2019, and the matter is now fully briefed. ECF Doc. 11. Because Porter's petition was not filed within the one-year limitations period under 28 U.S.C. § 2244(d)(1) and because Porter is not entitled to any tolling of the statute of limitations, I recommend that the Court GRANT Warden Bowerman's motion to dismiss Porter's habeas petition.

---

[1] Porter was also sentenced to serve an additional, consecutive four-year prison term for violating the terms of community control from an earlier case, *State v. Porter*, Cuy. Cty. Ct. Comm. Pl. Case No. CR-11-548804-A. *See* ECF Doc. 8-1 at 162 (¶8). However, the Ohio Court of Appeals reversed and remanded Porter's sentence on the community control violation. Porter's habeas petition raises no issue concerning this separate matter. *See generally* ECF Doc. 1.

# I. State Court History

## A. State Trial Court Proceedings, Case No. CR-14-585728-A

On May 23, 2014, aCuyahoga County, Ohio, grand jury indicted Porter on eight counts with specifications:[2]

| Count | Charge | Ohio Rev. Code | Date(s) | Specifications |
|-------|--------|----------------|---------|----------------|
| 1 | Participating in a Criminal Gang – F2 | 2923.42(A) | 6-17-2013 to 12-6-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A) |
| 2 | Aggravated Murder - UF | 2903.01(A) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A)<br>Gang Activity – 2941.142(A) |
| 3 | Aggravated Murder - UF | 2903.01(B) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A)<br>Gang Activity – 2941.142(A) |
| 4 | Aggravated Robbery – F1 | 2911.01(A)(1) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A)<br>Gang Activity – 2941.142(A) |
| 5 | Felony Murder – UF | 2903.02(B) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A)<br>Gang Activity – 2941.142(A) |
| 6 | Felonious Assault – F2 | 2903.11(A)(1) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A)<br>Gang Activity – 2941.142(A) |
| 7 | Kidnapping – F1 | 2905.01(A)(2) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A)<br>Gang Activity – 2941.142(A) |
| 8 | Having Weapons Under Disability – F3 | 2923.13(A)(2) | 8-29-2013 | Firearm Control – 2941.141(A)<br>Firearm Use – 2941.145(A) |

On August 27, 2014, the day his trial was scheduled to start, Porter informed the trial court that he had a plea agreement with the State. ECF Doc. 8-1 at 160, 402. Pursuant to the agreement, the State moved to amend the indictment by: (1) amending Count 3 to involuntary manslaughter in violation of Ohio Rev. Code § 2903.04 with a three-year firearm specification under Ohio Rev. Code § 2941.145(A); and (2) amending Count 4 by deleting the specifications. Id. at 27, 160, 402-03. Porter agreed to plead guilty to the amended charges in Counts 3 and 4,

---

[2] ECF Doc. 8-1 at 5-13.

to waive any argument that Counts 3 and 4 were allied offenses, and to testify against his

codefendant, Julius Webster.  *Id.* at 27, 160, 402-05, 412-13.

The trial court conducted a plea colloquy.  ECF Doc. 8-1 at 405-18.  The trial court

warned Porter that: (1) his guilty plea could result in a probation violation in Case No. CR-11-

548804-A; (2) he could face a maximum penalty of life imprisonment without parole if

convicted of aggravated murder as originally charged in Count 3; (3) the amended involuntary

manslaughter charge in Count 3 carried a maximum penalty of 11 years' imprisonment with a

mandatory consecutive 3-year prison term for the firearm specification; (4) the amended

aggravated robbery charge in Count 4 carried a potential 3-year to 11-year prison term and a fine

of up to $20,000; (5) he would be subject to a five-year term of post-release control on both

counts; and (6) if he refused to testify as agreed, the State could withdraw from the agreement

and prosecute him pursuant to the original indictment.  *Id.* at 406, 408-12, 417.  The trial court

also explained that the Ohio and U.S. Constitutions guaranteed him certain trial rights, including

the right to: a jury trial, at which the government would have the burden to prove that he was

guilty beyond a reasonable doubt; counsel at all stages of the trial; cross-examine witnesses

against him; compel testimony from his own witnesses; and remain silent without his silence

being held against him.  *Id.* at 414.

Porter stated that he understood English, he was not under the influence of drugs or

alcohol, and his plea was not induced through threats or promises outside of the plea agreement.

ECF Doc. 8-1 at 406-07.  He said that he understood his rights, that his guilty plea waived those

rights, and that his plea admitted the truth of the charges against him.  *Id.* at 414-15.  He also said

he was satisfied with counsel's representation.  *Id.* at 407.  Porter pleaded guilty to the amended

charges in Counts 3 and 4.  *Id.* at 27, 160, 415.  The trial court found that Porter's guilty plea was

knowing, intelligent, and voluntary.  *Id.* at 416.  The court accepted Porter's guilty plea, found

3

him guilty of the charges in Counts 3 and 4, and dismissed Counts 1, 2, and 5 through 8.  *Id.* at 27, 416.

In January 2015, Porter refused to testify at the trial against Webster.  ECF Doc. 8-1 at 161.  On February 2, 2015, Porter moved to withdraw his guilty plea.  *Id.* at 29-32.  In his motion, Porter asserted that he pleaded guilty "out of fear and panic that he could be sentenced to a life term if he proceeded to jury trial and lost," and that his fear precluded him from "truly understanding his trial right and the consequences of his plea."  *Id.* at 30.  He stated that he was not guilty and wished to proceed to trial.  *Id.* at 30.

On February 19, 2015, the trial court held a hearing on Porter's motion to withdraw his guilty plea.  ECF Doc. 8-1 at 420-71.  At the hearing, Porter testified that he pleaded guilty because he was under extreme duress because he faced a potential life sentence, and that he "always said [he] was innocent."  *Id.* at 432-33, 438, 462.  Porter said that he did not understand what happened during the plea colloquy because his mind was "clouded," that he did not know at the time that he and his family would receive threats from Webster and other gang members, and that he did not know the full extent of his confidential informant activities could be revealed.  *Id.* at 439-57.  He acknowledged that he never informed the court that his head was clouded during the plea colloquy.  *Id.* at 445-46.  He testified that he told his attorney that he wanted to withdraw his guilty plea "a couple days later" (after the change-of-plea hearing), and he repeated his request "every time that [he saw] them" ("five times").  *Id.* at 434.  Porter, through counsel, argued that his motion should have been granted because he was unable to understand his guilty plea due to fear about the potential consequences of his trial, as well as pressure from his family.  *Id.* at 463-66.  The state argued that Porter understood his plea, understood the danger in agreeing to testify against Webster, and wanted to withdraw his plea merely because he had a change of heart.  *Id.* at 466-67.  Further, the state argued that it would be prejudiced if the court

4

allowed Porter to withdraw his plea, because the state was in a better position to go to trial in August 2014 and because he precluded the state from having his truthful testimony against Webster.  *Id.* at 467-69.

The trial court denied Porter's motion, and Porter's case proceeded to sentencing.  *Id.* at 46.  On March 12, 2015, the court sentenced Porter to serve a 10-year prison term on the involuntary manslaughter conviction, a consecutive 3-year term for the firearm specification, and a consecutive 7-year term for the aggravated robbery conviction.  The aggregate sentence on these offenses was 20 years.  *Id.* at 52.  The Court also found that Porter violated the terms of his community control in Cuy. Cty. Ct. Comm. Pl. Case No. CR-11-548804-A and sentenced him to serve an additional, consecutive four-year prison term in Cuy. Cty. Ct. Comm. Pl. Case No. CR-14-585728-A.  ECF Doc. 8-1 at 370.  The aggregate sentence was 24 years.

### B.      Delayed Direct Appeal, Case No. 103185

On June 25, 2015, Porter, through new counsel, filed a notice of appeal and motion for leave to file a delayed appeal.  ECF Doc. 8-1 at 54-66.  On July 15, 2015, the Ohio Court of Appeals granted Porter's motion to file a delayed appeal.  *Id.* at 71.  Porter's appellate brief raised the following assignments of error:

1.  The trial court abused its discretion when it overruled the appellant's motion to withdraw his plea.

2.  The trial court abused is discretion when it sentenced the appellant to an additional term of incarceration in Case No. 548804, additionally to the instant case, when the appellant was not advised of such an additional time during his change of plea.

3.  The appellant did not receive effective assistance of counsel who did not advise the appellant about serving any time of incarceration beyond twenty years in violation of the Due Process clause of the Fourteenth Amendment of the United States Constitution and Art. 1, Sect. 10 of the Ohio Constitution.

*Id.* at 73, 82-87.  Porter filed a supplemental brief, raising a fourth claim: "[t]he trial court's sentencing of appellant to four years for three offenses is contrary to law under R.C. 2953.08(G)."  *Id.* at 115.

On September 15, 2016, the Ohio Court of Appeals overruled Porter's first and third assignments of error but sustained his second assignment of error.  ECF Doc. 8-1 at 157-74.  The court vacated the additional four-year prison term imposed in Case No. CR -11-548804-A and remanded the matter to the trial court of resentencing.  *Id.* at 157-74.  That is, the convictions and sentences imposed in Case No. CR-14-585728-A were affirmed, but the sentence imposed in Case No. CR-11-548804-A was reversed.  Porter did not appeal the court of appeals' decision to the Ohio Supreme Court.

**C.      Petition for Post-Conviction Relief, Case No. CR-14-585728**

Nine months later, on June 20, 2017, Porter filed a *pro se* petition to vacate or set aside the judgment of conviction and sentence in the Cuyahoga County Court of Common Pleas.  ECF Doc. 8-1 at 175.  Porter raised one claim for relief:

> The petitioner was deprived of the effective assistance of trial counsel as it pertains to counsel's presentence efforts to withdraw the guilty plea, in violation of the *Sixth Amendment* to the Constitution of the United States, as well as Section 10, Article I of the Ohio Constitution.

*Id.* at 185.  In support of his postconviction petition, Porter attached a March 31, 2017, letter from his trial counsel, stating:  "Shortly after entering his guilty pleas [Porter] contacted the undersigned and requested that a Motion to Vacate Guilty plea be filed on his behalf.  I recall that this request was by phone call and was within days after entering his plea."  *Id.* at 206.  On July 7, 2017, the trial court issued a decision, stating only that "[d]efendant's petition to vacate or set aside judgment of conviction and sentence is denied."  *Id.* at 217.

On July 19, 2017, Porter, *pro se*, timely appealed the denial of his postconviction petition to the Ohio Court of Appeals.  ECF Doc. 8-1 at 218.  Porter's merits brief raised the following assignments of error:

1.  The trial court erred, and due process was denied, when the court failed to include findings of fact and conclusions of law in the judgment denying Appellant's postconviction petition, and further, in rendering said judgment before appellant's time to reply to the state's response expired.

2.  The trial court abused its discretion in failing to grant Appellant's postconviction petition, or at the very least, in failing to hold an evidentiary hearing on said petition.

*Id.* at 226, 233-46.

On March 29, 2018, the Ohio Court of Appeals overruled Porter's assignments of error and affirmed the trial court's judgment.  ECF Doc. 8-1 at 287-96.  The court of appeals opinion explained that, because Porter's direct appeal transcripts were filed on August 24, 2015, his deadline to file his postconviction petition was August 24, 2016.  *Id.* at 292.  His June 2017 petition was untimely.  *Id.* at 292.  The court also explained that the court of common pleas did not have jurisdiction to review Porter's untimely postconviction petition because: (1) he did not show that he was "unavoidably prevented" from discovering the facts upon which his petition relied, *i.e.* trial counsel's delay in filing the motion to withdraw his guilty plea; and (2) Porter did not establish by clear and convincing evidence that no reasonable factfinder would have found him guilty absent the alleged constitutional error at trial.  *Id.* at 293-95.  The court of appeals found that the trial court's lack of jurisdiction over Porter's postconviction petition obviated the requirement to make findings of fact and conclusions of law.  *Id.* at 292, 295.

On May 7, 2018, Porter, *pro se,* appealed to the Ohio Supreme Court.  ECF Doc. 8-1 at 297.  Porter's memorandum in support of jurisdiction raised two propositions of law:

> **Proposition of Law No. 1:**  Due process was denied when the trial court failed to include findings of fact and conclusions of law in the Journal Entry denying Appellant's postconviction petition, and also, in denying petition before Appellant's time to file a reply expired.

> **Proposition of Law No. 2:**  The trial court abused its discretion in failing to grant Appellant's postconviction petition, or at the very least, in failing to hold an evidentiary hearing on said petition.

*Id.* at 300, 303-13.  The Ohio Supreme Court declined jurisdiction over Porter's appeal.  *Id.* at 326.

### D.      Delayed Ohio App. R. 26(B) Application to Reopen Appeal

On May 4, 2018, Porter filed an untimely, *pro se* App. R. 26(B) application to reopen his appeal.  ECF Doc. 8-1 at 327.  Porter said that he was delayed in filing the application because he was "denied access to the transcript filed in the appeal . . . [and] had no knowledge that there was any reference in the trial court record to the fact that he sought to withdraw the plea within days of entering the plea."  *Id.* at 330.  Porter asserted that he had good cause for the untimely filing because he pursued his claims diligently and the delay resulted from the State's actions and ineffectiveness of his trial and appellate counsel.  *Id.* at 331-32.  Porter indicated that he wished to raise one claim in his reopened appeal:

> Because the appellant sought to withdraw the guilty plea within days of entering the plea (thus there could be no prejudice to the state), and because he asserted his innocence as cause, the trial court abused its discretion in failing to grant the motion to withdraw the plea.

*Id.* at 333-34.  On July 6, 2018, the Ohio Court of Appeals denied Porter's application to reopen because the "lack of access to a transcript does not constitute good cause for an untimely application to reopen."  *Id.* at 343-47.

8

On August 17, 2018, Porter appealed the denial of his App. R. 26(B) to the Ohio Supreme Court.  ECF Doc. 8-1 at 348.  Porter's memorandum in support of jurisdiction raised one proposition of law:

> Error not considered due to appellate counsel's ineffective assistance:  Because the Appellant sought to withdraw the guilty plea within days of entering the plea (thus there could be no prejudice to the State), and because he asserted innocence as cause, the trial court abused its discretion in failing to grant the motion to withdraw the plea.

Id. at 351, 358-59.  On October 10, 2018, the Ohio Supreme Court declined jurisdiction over Porter's appeal.  Id. at 367.

## II.     Federal Habeas Petition

On January 4, 2019[3], Porter filed his petition for writ of habeas corpus (ECF Doc. 1), raising one ground for relief:

> Petitioner's federal constitutional rights were violated when the state refused to allow him to withdraw his guilty plea.
>
> **Supporting Facts:**  The sum of this habeas action will prove conclusively that the following are the salient facts that pertain to the Petitioner's efforts to withdraw his guilty plea: (1) he sought to withdraw the plea because he is innocent; (2) he sought to withdraw the plea within days of entering it; thus (3) there could be no prejudice to the state.  Despite facts and circumstances that should have resulted in the Petitioner being permitted to withdraw his plea, his efforts were denied in all state court remedies available to him.  Thus, a writ of habeas corpus is warranted.

Id. at 5, 17-18.

---

[3] Although Porter's petition is marked as received on January 28, 2019, records indicate that he executed his petition and placed it into the prison mail system on January 4, 2019.  ECF Doc. 1 at 17; ECF Doc. 8 at 9.

### III.     Law and Analysis

### A.     AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas corpus petitions filed after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh*, 521 U.S. at 333 n.7, 28 U.S.C. 2254(d), and imposes strict procedural requirements on petitioners. *See*, *e.g.*, 28 U.S.C. §§ 2244(b) (bar on second or successive petitions), 2244(d) (one-year statute of limitations), 2254(b) (exhaustion of state court remedies), 2254(e)(2) (procedural default).  Under the AEDPA's statute of limitations, a state prisoner must file his petition within one-year of:

> **(A)**   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)**   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)**   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)**   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under § 2244(d)(1)(A), direct review or the time for seeking direct review, concludes when all direct criminal appeals – including the completion of proceedings on a petition for writ of certiorari before the U.S. Supreme Court, or the expiration of the 90-day period for filing such a petition – are completed.  *Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012); *Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009).  When a petitioner does not file an appeal from the state appellate court to the state supreme court, direct review is concluded when the time for

seeking state supreme court review expires.  *Gonzalez*, 565 U.S. at 150; *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460-61 (6th Cir. 2012).  A motion for a delayed appeal tolls the limitations period while the motion remains pending.  *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006) (citing *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001)). When a state court actually reopens a direct appeal, direct review is concluded for statute-of-limitations purposes when the reopened appeal is concluded.  *Jimenez*, 555 U.S. at 119-20; *but see Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (*en banc*) (the reopening of an appeal under Ohio App. R. 26(B) based on a claim of ineffective assistance of counsel is a collateral proceeding and not part of the direct review process).  When a state court actually reopens a direct appeal, direct review is concluded for statute-of-limitations purposes when the reopened appeal is concluded. *Jimenez*, 555 U.S. at 119-20; *but see Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (*en banc*) (the reopening of an appeal under Ohio App. R. 26(B) based on a claim of ineffective assistance of counsel is a collateral proceeding and not part of the direct review process).

A "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" tolls the limitations until the conclusion of the collateral review process.  28 U.S.C. § 2244(d)(2); *McClendon v. Sherman*, 329 F.3d 490, 493-94 (6th Cir. 2003).  A post-conviction relief petition is considered "properly field" only if it meets the applicable state rules governing filing.  *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004).  "[T]ime limits, no matter their form, are 'filing' conditions."  *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).  Untimely post-conviction petitions or other collateral motions do not toll the AEDPA statute of limitations, despite any exceptions to the timely filing requirement that might exist under state law.  *See id.* at 413-14.

11

### B.    Relevant Ohio Law

#### 1.    Time Limits for Direct Appeals

An Ohio defendant has 30 days from the date his conviction and sentence become final to file a timely direct appeal.  Ohio R. App. P. 4(A).  On direct appeal, the appellant may only present issues captured in the trial court record.  *See State v. Johnson*, No. 97698, 2012-Ohio-3812 at ¶28 (Ohio Ct. App., Aug. 23, 2012) ("On direct appeal we are limited to a review of the trial record.").  In non-capital cases, an Ohio criminal defendant must generally file a notice of appeal to the Ohio Supreme Court and memorandum in support of jurisdiction within 45 days after the Ohio Court of Appeals rules on the initial appeal.  *See* Ohio S. Ct. Prac. R. 7.01(A)(1). If the defendant fails to file a timely appeal from a court of appeals decision affirming a felony conviction, the defendant may seek leave to file a delayed appeal to the Ohio Supreme Court. Ohio S. Ct. Prac. R. 7.01(A)(4).  If the defendant does not file a timely appeal to the Ohio Supreme Court, and the Court does not grant a motion for a delayed appeal, the Ohio Supreme Court is divested of jurisdiction over the defendant's appeal.  Ohio S. Ct. Prac. R. 7.01(A)(1)(b) ("Except as provided in divisions (A)(2), (3), (4), (5), and (6) of this rule . . . the appellant's failure to file within this time period shall divest the Supreme Court of jurisdiction to hear the appeal.").

#### 2.    Time Limits for Post-Conviction Motions

Ohio post-conviction procedure is governed by Ohio Rev. Code § 2953.21.  An Ohio criminal defendant must file his post-conviction motion within 365 days after: (1) the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction; or (2) the date the time to file a timely direct appeal expired, if the defendant did not file a timely direct appeal.  Ohio Rev. Code § 2953.21(A)(2).  When a trial court dismisses a timely post-conviction petition, the court must "make and file findings of fact and conclusions of

12

law with respect to such dismissal." Ohio Rev. Code § 2953.21(D).  Nevertheless, "a trial court need not issue findings of fact and conclusions of law when it dismisses an untimely petition." *State ex rel. Kimbrough v. Greene*, 781 N.E.2d 155, 156 (Ohio 2002).  When a court dismisses a post-conviction petition as untimely, the dismissal order is immediately final and appealable. *State ex rel. Williams v. Krichbaum*, No. 07-MA-61, 2007-Ohio-3037 at ¶10 (Ohio Ct. App. June 15, 2007).

An unsuccessful post-conviction petitioner must initiate an appeal within 30 days of judgment, or within 30 days of the resolution of a post-judgment motion to file findings of fact and conclusions of law.  Ohio R. App. P. 4(A)(1), (B)(2)(D).  A court of appeals has no authority to grant a petitioner's motion for leave to file a delayed appeal in a post-conviction context. *State v. Harvey*, 428 N.E.2d 437, 438 (Ohio Ct. App. 1980).

## C. Untimely Petition

Warden Bowerman argues that Porter's habeas petition should be dismissed as untimely because he did not file it within the one-year limitations period under § 2244(d)(1)(A).  ECF Doc. 8 at 12-16.  Warden Bowerman asserts that Porter's limitations period began to run on November 1, 2016 – 45 days after the Ohio Court of Appeals issued its September 15, 2016, decision affirming his convictions and sentences in Case No. CR-14-585728-A.  *Id.* at 12; ECF Doc. 8-1 at 157-74.  Further, Warden Bowerman contends that Porter's untimely post-conviction petition and App. R. 26(B) application to reopen his direct appeal did not toll the limitations period.  *Id.* at 12-13.

Porter responds that he filed his habeas petition within the applicable limitations period because his postconviction petition and application to reopen his direct appeal tolled the limitations period.  ECF Doc. 11 at 5-6.  He asserts that 230 days ran from the end of his direct review until his June 20, 2017, postconviction petition, and that his limitations period did not

13

begin to run again until the Ohio Supreme Court issued its October 10, 2018, decision declining jurisdiction over the appeal from the denial of his application to reopen. *Id.* at 6.  Because he filed his habeas petition 85 days later (on January 4, 2019), Porter contends that his habeas petition was well-within the one-year limitations period. *Id.*

Porter's habeas petition is untimely.  Because Porter did not appeal the Ohio Court of Appeals' decision affirming his convictions and sentences in Case No. CR-14-585728-A to the Ohio Supreme Court, the AEDPA limitations period began to run on October 31, 2016 – the date Porter's deadline to seek Ohio Supreme Court review of the court of appeals decision expired. Ohio S. Ct. Prac. R. 7.01(A)(1); *Gonzalez,* 565 U.S. at 150; *Keeling,* 673 F.3d at 460-61; ECF Doc. 8-1 at 157-74.  Further, Porter did not "properly file" a postconviction petition or other motion for collateral review to toll the limitations period. 28 U.S.C. § 2244(d)(2); *McClendon,* 329 F.3d at 493-94; *Artuz,* 531 U.S. at 8; *Walker,* 360 F.3d at 563; *Pace,* 544 U.S. 413-14, 417. Here, Porter's June 2017 postconviction petition was not "properly filed" because it was not filed within 365 days after date his direct appeal transcripts were filed, on August 24, 2015.  Ohio Rev. Code § 2953.21(A)(2); *Pace,* 544 U.S. 413-14, 417; ECF Doc. 8-1 at 292.  Similarly, Porter's May 4, 2018, application to reopen his direct appeal was not "properly filed" because he did not file it within 90 days after the Ohio Court of Appeals' September 15, 2016, decision and because the Ohio Court of Appeals concluded Porter had not shown good cause for his untimely filing. ECF Doc. 8-1 at 327, 343-47.  Thus, Porter was required to file his federal habeas petition on or before November 1, 2017 – one year from the day after his right to appeal to the Ohio Supreme Court expired. 28 U.S.C. § 2244(d).  Because Porter did not file his habeas petition until January 4, 2019, his petition is must be dismissed as untimely unless a later statute of limitations or a tolling provision applies. ECF Doc. 1.

14

### D.     Later Discovery of "Factual Predicate"

Warden Bowerman argues that Porter is not entitled to a later limitations period under 28 U.S.C. § 2244(d)(1)(D) because: (1) he did not present any evidence regarding when a duly diligent person in his circumstances could have discovered the factual predicate of his claim; and (2) the record belies any potential argument that he could not have discovered his claim earlier through due diligence. ECF Doc. 8 at 13-16.

Porter responds that he is entitled to a later limitations period under 28 U.S.C. § 2244(d)(1)(D) because he could not discover the evidence he now relies upon – his transcripts and counsel's March 31, 2017, letter – until he received them on April 12, 2017. ECF Doc. 11 at 10. He asserts that, because he timely filed his postconviction petition based on that new evidence within 69 days after receiving it and properly filed his application to reopen, the later limitations period was also tolled until the Ohio Supreme Court's October 10, 2018, decision. *Id.* at 11-15.

The relevant inquiry under 28 U.S.C. § 2244(d)(1)(D), is not when the petitioner could have or did obtain *the evidence* he relies upon in support of his habeas claims. Instead, the relevant inquiry is when the petitioner did or could have discovered the *factual predicate* for his habeas claim. *See* 28 U.S.C. § 2244(d)(1)(D); *cf. Lott v. Coyle*, 261 F.3d 594, 605 (6th Cir. 2001) (focusing, in evaluating a similar provision under 28 U.S.C. § 2254(e), on when the "factual information" could have been discovered). When a petitioner's "newly discovered evidence" merely provides information that was already known and presented at trial, it does not create a "newly discovered factual predicate." *See Souter v. Jones*, 395 F.3d 577, 587 (6th Cir. 2006) (noting that evidence "merely cumulative to the evidence already presented by the defense at trial" cannot form the newly discovered factual predicate under 28 U.S.C. § 2244(d)(1)(D)); *see also Ege v. Yukins*, 485 F.3d 364, 373 (6th Cir. 2007) (discovery of a prosecutors' letter

15

discussing a fact that was "obvious" could not establish a newly discovered factual predicate under 28 U.S.C. § 2244(d)(1)(D)).

Porter's "newly discovered evidence" – the March 31, 2017 letter from trial counsel – is not a newly discovered factual predicate sufficient to justify a later limitations period under 28 U.S.C. § 2244(d)(1)(D).  Porter uses the March 31, 2017 letter to support his claim that he asked counsel to move to withdraw his guilty plea within days after he entered it.  *See* ECF Doc. 1 at 17-18; ECF Doc. 11 at 8-15.  But at least two years before that letter was created, Porter knew that he had asked counsel to move to withdraw his guilty plea shortly after he entered it.  In fact, Porter testified during the February 2015 hearing on his motion to withdraw his plea that he told counsel he wanted to withdraw his plea within days after he entered it and that he repeated his request about five times.  ECF Doc. 8-1 at 463-66.  Porter dismissively refers to his hearing testimony as an "obscure reference" from the hearing transcript which itself could not have been discovered until the state relied upon it during his post-conviction proceedings.  *See* ECF Doc. 11 at 11.  Porter's argument comes up short.  He knew he testified at the hearing on February 19, 2015.  And his testimony revealed that he was well aware that he had told counsel that he wanted to withdraw his plea within days after he entered it.  ECF Doc. 8-1 at 463-66.  That he may have later forgotten the details of his prior testimony does not mean he did not give it.  And his February 2015 testimony was quite clear.  The March 31, 2017 letter is "merely cumulative" evidence which the Sixth Circuit has held insufficient to constitute a "newly discovered factual predicate."  *Souter*, 395 F.3d at 587; *Ege*, 485 F.3d at 373.  Porter's claim does not meet the requirements of 28 U.S.C. § 2244(d)(1)(D), and he is not entitled to a later statute of limitations commencement date under that provision.

16

### E.    Equitable Tolling

Warden Bowerman argues that Porter is not entitled to equitable tolling because he did not diligently pursue his claims during the relevant time period. ECF Doc. 8 at 17. Further, the warden asserts that Porter has not shown that "extraordinary circumstances" justify equitable tolling. *Id.* at 17-18. Warden Bowerman also contends that Porter is not entitled to equitable tolling under *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), because he has not produced new, reliable evidence that he was actually innocent. *Id.* at 18.

Porter responds that he is entitled to equitable tolling because he diligently pursued his claims. ECF Doc. 11 at 16-19. He asserts that he was not able to file his habeas petition until he exhausted all his available state court remedies – which he did by filing his untimely postconviction petition and delayed application to reopen his direct appeal. *Id.* at 7, 17-18. Further, Porter contends that a fundamental miscarriage of justice would result if his claims did not proceed to a merits determination because he was "deprived . . . of all opportunity of a trial following his consistent and ongoing assertions of actual innocence." *Id.* at 18-19.

Because AEDPA's statute of limitations is not jurisdictional, it is subject to equitable tolling. *Holland v. Florida*, 560 U.S 631, 645 (2010). If a petitioner seeks equitable tolling, he must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Holland*, 560 U.S. at 649 (2010) (quoting *Pace*, 544 U.S. at 418). The unavailability of or delay in receiving trial or other transcripts is not an "extraordinary circumstance" that prevents a habeas petitioner from filing a timely petition, and, thus, does not warrant equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750-51 (6th Cir. 2011) (explaining that the habeas rules require the *state*, not the petitioner, to "furnish the petitioner with the record once a habeas petition has been filed"). Similarly, a petitioner's *pro se* status or ignorance of procedural requirements is not an

"extraordinary circumstance" for purposes of equitable tolling. *See Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005); *see also Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted *pro se* representation alone or procedural ignorance as an excused for prolonged inattention when a statute's clear policy calls for promptness."). Further, diligence in pursuing state post-conviction relief cannot substitute for lack of diligence in filing a federal habeas corpus petition. *Vroman v. Brigano*, 346 F.3d 598, 605-06 (6th Cir. 2003).

Porter is not entitled to equitable tolling. Porter has not shown that he diligently pursued his rights or diligently sought to file a habeas petition. *Holland*, 560 U.S. at 469. Here, the record undermines Porter's argument that he diligently pursued filing his state postconviction petition and application to reopen his direct appeal. As discussed above, Porter's postconviction petition and application to reopen his direct appeal were both untimely. Further, Porter's asserted diligence in pursuing state postconviction relief is not relevant to whether he was diligent in pursuing federal habeas relief. *Vroman*, 346 F.3d at 605-06. Similarly, Porter's mistaken belief that he was required to file a state postconviction petition and application to reopen his direct appeal in order to exhaust his state court remedies before he could seek federal habeas relief is not sufficient to warrant equitable tolling. *See Griffin*, 399 F.3d at 637; *Johnson*, 544 U.S. at 311; *see also Rhines v. Weber*, 544 U.S. 269, 274-77 (2005) (providing that, to avoid statute of limitations problems under 28 U.S.C. § 2244(d)(2), a state prisoner may file a petition asserting exhausted and unexhausted claims and seek a stay of abeyance so he may exhaust state remedies); *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981) (the exhaustion requirement "does not require pursuit of a state remedy [when] such a pursuit is clearly futile"); *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability."). Moreover, Porter has not pointed to any "extraordinary circumstance" that stood in the way of his filing a timely habeas

18

petition.  *Holland*, 560 U.S. at 649.  Binding precedent precludes Porter from asserting that the asserted delay in receiving his transcripts was an "extraordinary circumstance" justifying equitable tolling.  *Hall*, 662 F.3d at 750-51.  Finally, Porter, though he asserts he is actually innocent, has produced no new evidence – or any evidence at all – to substantiate such a claim[4]. Thus, Porter is not entitled to equitable tolling of the limitations period.

Accordingly, because equitable tolling does not apply, I recommend that the warden's motion to dismiss Porter's habeas petition as untimely be granted.

## IV.    Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

---

[4] Porter may believe that he was innocent because he was not the person who pulled the trigger to kill the victim in this case.  Though Porter has not developed an argument on that point, Ohio law is quite clear that an aider and abettor is just as responsible for a murder as the person who did the actual killing.

**B.      Analysis**

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id.* at 486.  If the Court accepts my recommendations, Porter will not be able to show that the Court's conclusion that Porter's petition was untimely under 28 U.S.C. § 2244(d)(1) is debatable.  Thus, I recommend that a certificate of appealability not be issued.

**V.      Recommendation**

Because Porter's petition was not filed within the one-year limitations period under 28 U.S.C. § 2244(d)(1) and because Porter is not entitled to equitable tolling, I recommend that the Court GRANT Warden Bowerman's motion (ECF Doc. 8) to dismiss Porter's petition for writ of habeas corpus.  I further recommend that Porter not be granted a certificate of appealability.

Dated: September 23, 2019

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).